UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TONNY STOREY, | CASE NO. C23-1529-KKE |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |
| AMAZON.COM SERVICES LLC, | |
| Defendant. | |

Plaintiff Tonny Storey filed this putative class action alleging several claims arising from the delayed delivery of an item he ordered from Defendant Amazon.com Services LLC ("Amazon").  Dkt. Nos. 1-2, 23.  Amazon filed a motion to dismiss the operative complaint in its entirety.  Dkt. No. 25.  The Court agrees that the contract-related claims should be dismissed with prejudice because the delayed delivery does not breach the parties' contract.  The Court is not certain, however, that amendment could not cure the deficiencies in Storey's claim for violation of Washington's Consumer Protection Act ("CPA"), and the Court therefore dismisses the CPA claim as pleaded with leave to amend.

//

//

//

//

1

## I.   BACKGROUND[1]

Plaintiff Tonny Storey purchased tea for $19.99 from online retailer Amazon on March 27, 2023.  Dkt. No. 23 ¶ 4.9.  As a member of the Amazon Prime subscription service, Storey was offered a choice between two next-day "Fastest Delivery" delivery options for an additional $2.99: either between 4 a.m. and 8 a.m., or between 7 a.m. and 11 a.m.  *Id*. ¶¶ 4.10–4.11.  Storey requested the earlier delivery timeslot, between 4 a.m. and 8 a.m.  *Id*.  Amazon confirmed in the "Final Details" page associated with Storey's order, as well as in subsequent emails, that Storey's order would arrive between 4 a.m. and 8 a.m. on March 28, 2023.  *Id*. ¶¶ 4.16–418.  At 7:33 a.m. on March 28, 2023, Storey received an email from Amazon that his order was "on the way but running late[,]" and expected to arrive by 11 a.m.  *Id*. ¶ 4.19.  Storey received notice at 1:01 p.m. that his tea had been delivered.  *Id*. ¶ 4.20.

Storey filed this putative class action in September 2023 in King County Superior Court, and Amazon removed the suit to this Court in October 2023.  Dkt. No. 1.  Amazon filed a motion to dismiss for failure to state a claim in December 2023, and the parties subsequently agreed to a schedule by which Storey would file an amended complaint and Amazon would file a renewed motion to dismiss.  Dkt. Nos. 17, 21.

Storey filed an amended complaint in January 2024, contending that Amazon's failure to deliver his order during the promised window of time he selected, and its failure to reimburse him for the extra shipping cost he incurred, constitute a breach of contract, a breach of Amazon's duty of good faith and fair dealing, unjust enrichment, and a violation of the CPA. Dkt. No. 23.  Amazon filed a renewed motion to dismiss, contending that Storey had again failed to state a valid claim.

---

[1] The facts described in this section are taken from the operative complaint (Dkt. No. 23) and assumed to be true for purposes of resolving Amazon's motion to dismiss.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 2

Dkt. No. 25.  The Court grants that motion, after considering the parties' briefing,[2] the oral argument of counsel, and the balance of the record.

## II.   ANALYSIS

### A.   Legal Standard

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court examines the complaint to determine whether, if the facts alleged are true, plaintiff has stated "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible if plaintiff has pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.

"If a motion to dismiss is granted, a court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts." *Chinatown Neighborhood Ass'n v. Harris*, 33 F. Supp. 3d 1085, 1093 (N.D. Cal. 2014).

### B.   The Breach of Contract Claim is Dismissed With Prejudice.

The parties agree that the contract at issue includes Storey's checkout page, the "Guaranteed Delivery" pages within Amazon's Help & Customer Delivery pages ("the Help pages"), and Amazon's conditions of use ("COU") that apply when an order is placed.[3]  *See* Dkt. No. 27 at 13, Dkt. No. 31 at 6 n.1.  Storey's operative complaint alleges that Amazon breached the contract in two ways: by failing to deliver his order within the timeslot he specified, and by failing

---

[2] This order refers to the parties' briefing using the CM/ECF page numbers.

[3] Although the Court is generally confined to reviewing the operative complaint in resolving a motion to dismiss, the parties have submitted the documents that comprise the parties' contract at issue in this case and requested that the Court take judicial notice of these documents.  *See* Dkt. Nos. 26, 29.  The parties agree that these documents are not subject to dispute and the Court grants their requests for judicial notice.  Dkt. Nos. 26, 28, 29.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 3

to automatically refund the $2.99 shipping fee because his order did not arrive during the timeslot he selected.  Dkt. No. 23 ¶¶ 6.5–6.6.

Amazon argues that because Storey has not identified any contract provision where Amazon guaranteed that Storey's order would arrive during the time window he specified, or where Amazon promised to automatically refund Storey's shipping fee if his order arrived later than the time window he specified, Storey has failed to state a claim for breach of contract.  Dkt. No. 25 at 12–19.

For the following reasons, the Court agrees with Amazon that Storey has failed to state a valid claim for breach of contract as to both of the breaches alleged in the operative complaint. The Court will first set out the legal standards governing its interpretation of the contract at issue in this case, and then turn to consider each of the breaches Storey alleges.

1. Legal Standards on Contract Interpretation[4]

Washington courts "follow the objective manifestation theory of contracts.  Under this approach, we attempt to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties."  *Hearst Comm'cns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005).  "[W]hen interpreting contracts, the subjective intent of the parties is generally irrelevant if the intent can be determined from the actual words used[,]" and courts "generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." *Id*.

"It is a fundamental precept of contract law that contracts must be interpreted in accordance with all of their terms."  *Storti v. Univ. of Wash.*, 330 P.3d 159, 164 (Wash. 2014).  "An

---

[4] The COU indicate that Washington law governs any disputes arising from Storey's use of "any Amazon Service" (Dkt. No. 26-4 at 5), and neither party disputes that Washington law controls.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 4

interpretation of a contract that gives effect to all provisions is favored over an interpretation that renders a provision ineffective, and a court should not disregard language that the parties have used." *Snohomish Cnty. Pub. Transp. Benefit Area Corp. v. FirstGroup Am., Inc.*, 271 P.3d 850, 856 (Wash. 2012).

   2.   Storey's Order Did Not Qualify for "Guaranteed Delivery" as Defined in the Contract.

A claim for breach of contract has four elements: duty, breach, causation, and damages. *Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*, 58 F. Supp. 3d 1166, 1171 (W.D. Wash. 2014), *aff'd sub nom. Hard2Find Accessories, Inc. v. Amazon.com, Inc.*, 691 F. App'x 406 (9th Cir. 2017). "For any breach to arise, there must first be some duty to perform." *Id.*

Storey first alleges that Amazon breached the contract by failing to deliver his order within the time window that he specified on the checkout page. Dkt. No. 23 ¶¶ 6.5–6.6.

Amazon argues that Storey has failed to state a claim for breach of contract in this respect because the contract did not impose a duty on Amazon to guarantee that Storey's order would arrive during the time window that he specified on the checkout page. Dkt. No. 25 at 12–15. Amazon contends that only certain orders are subject to a delivery guarantee, and that Storey's order was not one of them. *Id.*

As support for this argument, Amazon cites its Help pages, which explain how "to place an order with guaranteed delivery":

1.   Add the item to your Shopping Cart and proceed to checkout.

2.   Choose a delivery address within the United States … or an eligible export country.

3.   On the checkout page, select the guaranteed shipping option.  Your delivery date will state "guaranteed" and be displayed on the final page before you place the order.

4. Pay using your credit card or debit card. If your order contains items that aren't eligible for a delivery guarantee, you may be prompted to select an option indicating you'd like to split up your shipments (at an additional cost). Your items will be ineligible for the guarantee if you don't select this option.

5. Place your order before the "order within" countdown displayed on the checkout page. The "order within" countdown timer provides the window of time in which you must place the order to receive your delivery by the date shown. That delivery date may become unavailable within that window because of changes in inventory or delivery capacity before you place your order. We'll state your confirmed delivery date in your order confirmation email. Contact us if you have any concerns.

Dkt. No. 26-2 at 2. Because it is undisputed that Storey's checkout page did not state that the delivery date was "guaranteed," Amazon argues that Storey's order did not qualify for "Guaranteed Delivery," and therefore any claim for breach of contract based on the "Guaranteed Delivery" provisions must fail. Dkt. No. 25 at 13–16.

At oral argument, Storey acknowledged that the checkout page did not explicitly describe his order as "guaranteed," but argued that the lack of this term was not dispositive because Amazon did not explicitly state that deliveries without the "guaranteed" label were not guaranteed.[5] Counsel characterized the "Guaranteed Delivery" Help pages as describing how to complete a process for ordering an item subject to guaranteed delivery, but suggested that this process is not the only method by which a delivery is guaranteed. Dkt. No. 35 at 34–36.

In essence, Storey's theory is that the promises made under the "Guaranteed Delivery" process should also apply to any order placed with a requested delivery date/time, "guaranteed" or not. This is because, Storey claims, he reasonably expected that because he was able to select a fast delivery date and time for an additional shipping fee, Amazon promised to guarantee delivery

---

[5] Storey also suggested at oral argument (Dkt. No. 35 at 29–30) that when Amazon's Help pages stated that "When guaranteed delivery is available on an order, we'll state this on the checkout page, with the associated delivery date and cost[,]" it is not clear what Amazon promised to state, because "this" is ambiguous. *See* Dkt. No. 26-6. This argument is not based on a plausible reading of the sentence. The plain meaning of the words in the sentence indicates that Amazon will state on the checkout page if guaranteed delivery is available.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 6

by that date and time.  The Court will not credit Storey's subjective expectation to rewrite the contract terms, however.  *See, e.g.*, *Farmers Ins. Co. of Wash. v. Miller*, 549 P.2d 9, 11 (Wash. 1976) ("[T]he court cannot … create a contract for the parties which they did not make themselves, nor can the court impose obligations which never before existed.").  When the contract is read as a whole, as it must be, the contract qualifies only some deliveries for "Guaranteed Delivery," and Storey's order does not satisfy all of those requirements.  *See* Dkt. Nos. 26-2, 26-6.  In order to give effect to all parts of the integrated contract here, the Court interprets the contract to mean that only those deliveries that qualify for "Guaranteed Delivery," as that term is defined in the contract, are in fact guaranteed.

Contrary to Storey's contention (Dkt. No. 27 at 16), the Court's interpretation of the contract does not render the bargain illusory.  The Court does not read the contract to leave Amazon without any obligations under the contract: instead, the Court reads the contract to require Amazon to fulfill Storey's order, which it did.

Because Storey has failed to show that Amazon breached a duty imposed on it by the contract by delivering his order outside his requested timeslot, Storey has failed to state a claim for breach of contract based on the delayed delivery.

3.  Storey Has Failed to State a Claim for Breach of Contract Related to the Refund.

Storey's first amended complaint also alleges that Amazon breached its contractual duties by failing to automatically issue a refund for Storey's shipping fee, after it failed to deliver his order within the time window he specified.  Dkt. No. 23 ¶¶ 6.5–6.6.  Storey does not dispute that he never requested a refund.  *See* Dkt. No. 27 at 28–29.

Amazon argues that Storey has pointed to no term in the contract at issue that requires Amazon to refund Storey's shipping fee automatically.  Dkt. No. 25 at 18.  The "Guaranteed Delivery" Help pages indicate that if an order placed with guaranteed delivery does not arrive on

its guaranteed date, then Amazon "[wi]ll refund any shipping fees associated with that order." Dkt. No. 18-3. As discussed above, however, the "Guaranteed Delivery" terms do not apply to Storey's order, and to the extent that a promise to refund fees for a delayed "Guaranteed Delivery" order could be read to mean that Amazon would refund those fees automatically (an issue the Court need not decide), this promise would not apply to Storey's order.

Storey's claim fares no better when looking to other parts of the contract because there is no provision wherein Amazon promises to refund shipping fees automatically if an order does not arrive during a requested time window. The contract allows customers to inquire about a refund if they believe one is owed (*see* Dkt. No. 29), but there is no provision obligating Amazon to provide a refund in the absence of a customer's request. Because Storey cannot identify a provision of the contract imposing a duty that was breached when Amazon failed to provide an automatic refund, he has failed to state a claim for breach of contract on this theory. *See Hard 2 Find Accessories*, 58 F. Supp. 3d at 1171 ("Plaintiff fails to identify which section of [the contract] is at issue and allegedly breached. This failure is fatal to Plaintiff's Claim.").

Because Storey's breach of contract claim is not supported by the undisputed provisions of the contract, he cannot cure the deficiencies with respect to the claim for breach of contract via amendment. The Court will therefore dismiss this claim with prejudice. *See, e.g.*, *id*. at 1177.

**C.   The Claim for Breach of the Duty of Good Faith and Fair Dealing is Dismissed With Prejudice.**

"Under Washington law, there is in every contract an implied duty of good faith and fair dealing that obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Hard 2 Find Accessories*, 58 F. Supp. 3d at 1173 (cleaned up).

Storey's first amended complaint alleges that Amazon breached its duty of good faith and fair dealing by failing to disclose to consumers that their selected delivery times were not

guaranteed and that refunds for late deliveries would not be provided automatically.  Dkt. No. 23 ¶¶ 6.9–6.13.

As explained above, however, the integrated contract as a whole does not impose a duty on Amazon to guarantee delivery on orders that do not qualify for "Guaranteed Delivery" as that term is defined in the contract, nor does the contract impose a duty on Amazon to provide refunds automatically on orders that do not qualify for "Guaranteed Delivery."  Just as Storey's failure to identify contract provisions imposing the duties that he alleges were breached is fatal to his claim for breach of contract, his claim for breach of the duty of good faith and fair dealing also fails because that implied duty "arises only in connection with terms agreed to by the parties."  *Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (Wash. 1991).  Furthermore, Storey cites no authority to support its suggestion that Amazon was required to explicitly identify what it does *not* promise to do, in order to act in good faith with respect to Storey's order.

Because Storey has failed to show that the contract here imposes the duties on Amazon that he alleges, he cannot show that Amazon breached the duty of good faith and fair dealing with respect to those duties.  *See Hard2Find Accessories, Inc.*, 691 F. App'x at 408 ("Because Amazon did not have the contractual duties alleged by [plaintiff], Amazon did not have a corresponding obligation to perform the duties in good faith.").

Storey's claim for breach of the duty of good faith and fair dealing is therefore dismissed with prejudice, because the deficiencies cannot be cured by amendment.

**D.    The Unjust Enrichment Claim is Dismissed With Prejudice**.

"Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it."  *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008).  "In such situations a quasi contract is said to exist between the parties."  *Id*.  The operative complaint lists a claim for unjust enrichment, "[i]n the alternative

to the causes of action [for breach of contract and breach of the duty of good faith and fair dealing], in the event of a finding that the parties did not enter into an express contract, or that the express contract does not include a contractual duty [to deliver items within the selected timeslot or to issue refunds automatically]." Dkt. No. 23 ¶ 6.14.

Amazon argues that because there is a valid express contract between the parties that pertains to the conduct that gave rise to this suit, Storey's claim for unjust enrichment on an implied contract theory must fail. *See* Dkt. No. 31 at 14–15 (citing *Minnick v. Clearwire US, LLC*, 683 F.Supp.2d 1179, 1186 (W.D. Wash. 2010) ("Under Washington law, a plaintiff who is a party to a 'valid express contract is bound by the provisions of that contract' and may not bring a claim for unjust enrichment for issues arising under the contract's subject matter." (quoting *Chandler v. Wash. Toll Bridge Auth.*, 137 P.2d 97, 103 (Wash. 1943)))).

Storey argues that his unjust enrichment claim should be allowed to proceed in the alternative because the parties disagree as to whether the contract at issue in this case includes the offer on the checkout page that was accepted by Storey's selection of a delivery timeslot. Dkt. No. 27 at 19–20. But as detailed above, the Court finds that when the contract is read as a whole, the contract does not explicitly impose a duty on Amazon to guarantee the timely delivery of Storey's order. To consider—as Storey urges the Court to do (Dkt. No. 27 at 19)—the checkout page as a separate, standalone contract, or an addendum to the contract as a whole, would require the Court to fail to give effect to all terms of the contract, namely the "Guaranteed Delivery" Help pages, in contravention of the applicable law discussed above.

Because the conduct at issue in the operative complaint is governed by the parties' valid express contract, Storey's claim for unjust enrichment cannot withstand Amazon's motion to dismiss. *See, e.g.*, *Chandler*, 137 P.2d at 103 ("A party to a valid express contract is bound by the provisions of that contract, and may not disregard the same and bring an action on an implied

1   contract relating to the same matter, in contravention of the express contract.").   Amendment of

2   the claim would not cure its deficiencies and the Court therefore dismisses it with prejudice.

3   **E.      The CPA Claim is Dismissed Without Prejudice.**

4          Storey's operative complaint identifies two of Amazon's business practices that he alleges

5   are unfair or deceptive: (1) collecting an extra shipping fee for delivering Storey's order and

6   allowing him to select a delivery timeslot, but not disclosing that delivery during that timeslot was

7   not "guaranteed"; and (2) promising (in the "Guaranteed Delivery" Help pages) to refund his extra

8   shipping fee if the order is delayed, but not providing the refund automatically.   Dkt. No. 23 ¶¶

9   6.19–6.25.

10         Washington's CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts

11  or practices in the conduct of any trade or commerce[.]"   WASH. REV. CODE § 19.86.020.   A CPA

12  claim has five elements: "(1) an unfair or deceptive act or practice (2) in trade or commerce (3)

13  that affects the public interest, (4) injury to plaintiff's business or property, and (5) causation."

14  *Wright v. Lyft, Inc.*, 406 P.3d 1149, 1153 (Wash. 2017).   "Where there is no dispute about what

15  the parties did, 'whether the conduct constitutes an unfair or deceptive act can be decided by this

16  court as a question of law.'"   *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 170

17  P.3d 10, 18 (Wash. 2007) (quoting *Leingang v. Pierce Cnty. Med. Bureau, Inc.*, 930 P.2d 288, 297

18  (Wash. 1997)).

19         Amazon contends that Storey has failed to identify an unfair or deceptive act or practice

20  that caused his injury, and thus has failed to state a CPA claim.   Dkt. No. 25 at 21–23.   Specifically,

21  Amazon argues that because the promises included in the "Guaranteed Delivery" Help pages do

22  not apply to Storey's order, Amazon's failure to abide by those promises was neither unfair nor

23  deceptive.   *Id.*   Amazon also notes that because Storey never attempted to request a refund, he

24  cannot show that Amazon's practices (rather than his own choices) caused his injury.   *Id.*

In his opposition, Storey argues that ordinary consumers are unlikely to parse through all of the Help pages and COU to determine the nature of their contract, as Amazon would require them to do. Dkt. No. 27 at 23–27. Moreover, Storey emphasizes that even if a consumer can reach the "Guaranteed Delivery" Help pages, those pages are nonetheless confusing and therefore deceptive as to which orders qualify for "Guaranteed Delivery." *Id*. at 26–27.

The Court finds that to the extent that Storey's CPA claim is based on confusing or deceptive terms in the "Guaranteed Delivery" Help pages, or promises made in the "Guaranteed Delivery" Help pages but not kept, it must fail. As explained above, the "Guaranteed Delivery" terms are clear and do not apply to Storey's order. Moreover, the CPA allegations in the operative complaint (Dkt. No. 23 ¶¶ 6.18–6.25) do not allege that Amazon's contractual terms are hidden or presented in a confusing manner, although Storey's counsel at oral argument described the Help pages and COU as "a maze" that is at best ambiguous and at worst misleading. *See* Dkt. No. 35 at 59. To the extent that this theory of deception could be considered inferred by Storey's allegation that the contract terms were not disclosed to him (Dkt. No. 23 ¶¶ 6.21–6.22), this theory assumes that reasonable consumers do not read all of the terms and conditions of their contracts or should not be expected to do so. Storey cites no authority supporting this assumption and the Court is not aware of any that would apply here, where the "Guaranteed Delivery" terms at issue are conspicuous and written in plain English.[6]

---

[6] For example, directly underneath the order total next to the "Place your order" button on the checkout page, the customer is notified that "[b]y placing your order, you agree to Amazon's privacy notice and conditions of use." Dkt. No. 26-5 at 2. In that sentence, "privacy notice" and "conditions of use" are links that connect the consumer directly to those pages. *Id*. Just below that section of the checkout page, the consumer reads "Need help? Check out our Help pages or contact us[,]" and "Help pages" and "contact us" link to those parts of the website. *Id*. These notices are conspicuous and described clearly, and their location on the checkout page and proximity to selections made by the consumer suggest that they would not be overlooked by the consumer. The parts of Amazon's website that are at issue in this case are clear, conspicuous, and do not require legal training to understand, despite Storey's counsel's suggestion at oral argument that they can be navigated and understood only by lawyers or logicians. *See* Dkt. No. 35 at 57–58.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 12

Moreover, the cases cited in Storey's opposition brief for the proposition that reasonable consumers should not be expected to look beyond the checkout page do not involve contract-based interactions.  *See* Dkt. No. 27 at 26 (citing *Walters v. Vitamin Shoppe Indus., Inc.*, 701 F. App'x 667, 670 (9th Cir. 2017) (claims related to vitamin package labeling); *State v. Mandatory Poster Agency, Inc.*, 398 P.3d 1271, 1277–80 (Wash. Ct. App. 2017) (claims related to purported government forms mass-mailed to members of the public); *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938–40 (9th Cir. 2008) (claims related to food package labeling)).  It is one thing, for example, to assume that consumers shopping at a grocery store do not read every word printed on a food packaging label before purchasing it, but another thing to assume that parties to a valid contract have not read its terms.  Parties to a valid contract are bound by its terms even if they choose not to read the terms, and conduct conforming with a valid contract is generally not unfair or deceptive for purposes of a CPA claim.  *See, e.g.*, *Brotherson v. Prof. Basketball Club, L.L.C.*, 604 F. Supp. 2d 1276, 1285 (W.D. Wash. 2009) ("[A] party who accepts a written offer without reading it nonetheless *objectively* manifests his or her assent to its terms."); *Mickelson v. Chase Home Finance LLC*, C11-1445MJP, 2012 WL 1301251, at *5 (W.D. Wash. Apr. 16, 2012) ("Only '[g]rossly unfair or unconscionable contracts' where the material terms were 'hidden in a maze of fine print' are properly found to be unfair or deceptive." (quoting *State v. Kaiser,* 254 P.3d 850, 860 (Wash. Ct. App. 2011)).

Storey's operative complaint does not allege that the contract in this case is grossly unfair or unconscionable or that it is otherwise invalid.  The Court therefore has no basis to find that Storey's operative complaint alleges an unfair or deceptive practice—the first element of a CPA claim—based on Amazon's failure to comply with the "Guaranteed Delivery" promises in the Help pages.  It is not unfair or deceptive for Amazon to fail to abide by promises it did not make. But, to the extent that, as suggested during oral argument (Dkt. No. 35 at 55–63) but not alleged

1

2

in the operative complaint, Storey's CPA claim could be based on a different theory, the Court will permit him to amend this claim.

### III.   CONCLUSION

For the reasons stated herein, the Court GRANTS Defendant's motion.  Dkt. No. 25.  The claims for breach of contract, breach of the duty of good faith and fair dealing, and unjust enrichment are dismissed with prejudice.  The CPA claim is dismissed without prejudice.  Plaintiff may file a second amended complaint no later than July 8, 2024.

Dated this 7th day of June, 2024.

_____
Kymberly K. Evanson
United States District Judge